UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| Sherry Michelle Leonard,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>Trans Union, LLC, and Ascent Funding, LLC,<br><br>　　　　　　　Defendants. | :<br>:<br>:<br>:  Civil Action No.<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**COMPLAINT AND JURY DEMAND**

　　　This is an action for damages brought by Plaintiff Sherry Michelle Leonard ("Plaintiff" or "Ms. Leonard") against the Defendants Trans Union, LLC ("Trans Union") and Ascent Funding, LLC ("Ascent") for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* (the "FCRA").

**INTRODUCTION**

　　1.　　Ms. Leonard is the victim of identity theft.

　　2.　　Ms. Leonard's ex-husband, without her consent, opened two student loans using her personal identifying information.

　　3.　　The student loans were credit reported through Ascent.

　　4.　　After discovering the existence of the student loans, Ms. Leonard sent letters to Trans Union, Experian Information Solutions Inc., ("Experian") and Equifax Information Services, LLC ("Equifax") identifying the Ascent student loan accounts on her credit reports as being the result of identity theft and provided all information required by Section 15 U.S.C. § 1681c-2(a) of the FCRA for those accounts to be blocked.

5. Accordingly, the Ascent student loan accounts were required to be blocked by Trans Union, Experian and Equifax pursuant to Section 1681c-2(a) of the FCRA.

6. Experian and Equifax blocked the student loan accounts reported by Ascent as required by the FCRA.

7. Even though it was required to do so pursuant to the FCRA, Trans Union refused to block the Ascent student loan accounts.

8. Instead, Trans Union claimed that it would conduct an investigation of Plaintiff's dispute pursuant to Section 1681(i)a of the FCRA.

9. Trans Union's investigation somehow resulted in only one of the two Ascent student loan accounts being removed from Ms. Leonard's credit report, thus violating Section 1681i(a) of the FCRA.

10. As discussed further below, Plaintiff brings claims against Defendant Trans Union for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), for failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and in fact, the product of identity theft, for failing to delete the disputed information from Plaintiffs credit file, in violation of the FCRA, 15 U.S.C. § 1681i, and for failing to block the identity theft items as required pursuant to Section 1681c-2.

11. Plaintiff also asserts claims against Ascent for failing to conduct a reasonable investigation to determine whether the information Ms. Leonard disputed was accurate, and in fact, the product of identity theft, and for failing to delete the disputed information from Plaintiff's credit file, in violation of FCRA, 15 U.S.C. § 1681s-2b.

12. Accordingly, Plaintiff seeks actual, statutory, and punitive damages, costs, and

attorneys' fees from the Defendants for their willful and/or negligent violations of the FCRA, as described herein.

## JURISDICTION AND VENUE

13. Jurisdiction of this Court arises under 15 U.S.C. § 1681p, and 28 U.S.C. §1331, 1337.

14. Venue lies properly in this district pursuant to 28 U.S.C. §1391(b).

## PARTIES

15. Plaintiff Sherry Michelle Leonard is an adult individual who resides in Raleigh, NC.

16. Plaintiff is a "consumer" as defined in 15 U.S.C. § 1681a(c) of the FCRA.

17. Defendant Trans Union is a business entity that is registered to do business in the Commonwealth of Pennsylvania and regularly conducts business in the Eastern District of Pennsylvania, with a principal place of business located at 1510 Chester Pike, Crum Lynne, PA 19022.

18. Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports (as defined in 15 U.S.C. § 1681a(d)) to third parties.

19. Defendant Ascent is a business entity that is registered to do business in the Commonwealth of Pennsylvania and regularly conducts business in the Eastern District of Pennsylvania, with principal place of business located at 402 W Broadway, 19th Floor, San Diego, CA 92101.

20. Ascent is a "furnisher" as defined in 12 CFR 1022.41 as it regularly furnishes

information relating to consumers to one or more consumer reporting agencies ("CRAs") for inclusion in a consumer report.

## FACTS

### The FCRA's Purpose and Protections Against Inaccurate Information

21. The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. See 15 U.S.C. § 1681(a).

22. The FCRA was intended to ensure that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. See 15 U.S.C. § 1681(b).

23. Congress also recognized that CRAs such as Trans Union "have assumed a vital role in assembling and evaluating consumer credit and other information on consumers." 15 U.S.C. § 1681(a)(3). Therefore, Congress determined that there "is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

24. To that end, Congress embedded special protections for identity theft victims within the FCRA. For instance, when a consumer identifies any information in their credit file that is the product of identity theft, the CRA must block (delete) the reporting of that information within four business days, provided the consumer submits:

4

  a. Appropriate proof of the identity of the consumer;

  b. A copy of an identity theft report;

  c. The identification of such information by the consumer; and

  d. A statement by the consumer that the information is not information relating to any transaction by the consumer. 15 U.S.C. § 1681c-2(a).

25. To further protect consumers against inaccurate reporting, the FCRA imposes the following duties on CRAs: (i) requiring CRAs to devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) requiring CRAs to investigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

26. Similarly, the FCRA requires furnishers, such as Ascent, to investigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies. 15 U.S.C. § 1681s-2b.

27. The FCRA provides consumers with a private right of action against CRAs, like Trans Union, and data furnishers like Ascent, that willfully or negligently fail to comply with their statutory obligations under the FCRA.

**Identity Theft of Plaintiff's Personal Identifying Information**

28. On or about September 13, 2021, Plaintiff and her then husband, Ayopelumi Oyindamola, separated.

29. Mr. Oyindamola moved to New Jersey while Ms. Leonard continued to reside in North Carolina.

30. After their separation, in or about August 2022, Ms. Leonard received a letter in the mail from Launch Servicing, LLC ("Launch") stating that a loan was in her name with Bank

of Lake Mills which was being serviced Launch.

31. Ms. Leonard was shocked and confused as she had never obtained any loan from Bank of Lake Mills.

32. After contacting Launch, Ms. Leonard learned that the loan issued by Bank of Lake Mills was a student loan.

33. Ms. Leonard then obtained a copy of the loan agreement for the student loan, which included her electronic signature, and listed her as a co-signer, with the borrower being Mr. Oyindamola.

34. The student loan agreement also included an email address (courttyner@yahoo.com) and phone number (186-230-7349) which did not belong to Ms. Leonard. In fact, the phone number had an area code of "186". There is no known United States area code with the numbers "186".

35. Based on a standard Google search terms of "186 area code", the search results state in part that, "[t]he 186 area code isn't a standard geographic area code in North America; it's often used in scams or by mistake, sometimes appearing as a spoofed number or related to mobile prefixes in countries like China (China Unicom 185-186) or Vietnam (Vietnamobile 186)".

36. The student loan agreement also stated that the loan was part of a loan program through Ascent, the Defendant that credit reported the inaccurate information.

37. Ms. Leonard informed Launch that she did not authorize anyone to sign her name, that her name was forged on the student loan document, and no information relating to the student loan should be credit reported.

38. In or about July 2023, Ms. Leonard received another letter from Launch regarding a second student loan that was opened using her name.

6

39. Once again, Mr. Oyindamola used Ms. Leonard's personal identifying information to obtain a second student loan.

40. At this time, Plaintiff was divorced from Mr. Oyindamola and certainly did not give him or any other person authorization to open yet another student loan account.

41. Ms. Leonard was in complete disbelief that a second student loan would be opened after she notified Launch that the original student loan taken out by Mr. Oyindamola was the result of identity theft.

42. Ms. Leonard contacted Launch again stating that she did not give permission or authorization to anyone, including Mr. Oyindamola, to use her information to obtain another student loan.

43. After notifying Launch that the student loan was obtained as a result of identity theft, Ms. Leonard then received a letter from Ascent confirming that she had notified Launch that the student loan was the result of identity theft.

44. Upon information and belief, Ascent and Launch are related but separate entities, as they both have the same mailing address, and share information between each other relating to student loans originated through Ascent's student loan program.

45. Moreover, both Ascent and Launch were communicating with Ms. Leonard while she was attempting to have the student loans removed from her name.

46. The fraudulent student loan that was originated in 2022 through Ascent's student loan program has the following account ending in # ***989 (the "First Fraudulent Student Loan").

47. The fraudulent student loan that was originated in 2023 through Ascent's student loan program has the following account ending in # ***873 (the "Second Fraudulent Student Loan", collectively with the First Fraudulent Student Loan, are referred to as the "Fraudulent

Student Loans".)

48.     The First Fraudulent Loan application was submitted electronically using DocuSign in June 2022.

49.     Ms. Leonard requested but was never provided with a copy of the Second Fraudulent Loan application.

50.     Ms. Leonard did not sign (electronically or otherwise) any student loan application relating to the Fraudulent Student Loans

51.     Ms. Leonard had no reason to co-sign for the Fraudulent Student Loans.

52.     Ms. Leonard has been separated from her ex-husband since approximately September 13, 2021, and has been divorced from him since approximately June 9, 2023.

53.     Trans Union, Experian and Equifax credit reported the Fraudulent Student Loans.

54.     Ms. Leonard disputed the Fraudulent Student Loans directly with Ascent, but her credit reports were not corrected.

55.     In or about December 2025, Plaintiff filed an FTC Identity Theft Report relating to the Fraudulent Student Loans.

56.     Plaintiff then submitted requests for the Fraudulent Student Loans to be blocked directly to Trans Union, Experian and Equifax.

57.     Experian and Equifax blocked the Fraudulent Student Loans and they were removed from Ms. Leonard's credit reports.

58.     Trans Union removed the Second Fraudulent Student Loan but continued to report the First Fraudulent Student Loan.

59.     As discussed further below, Trans Union was required by Section 1681c-2 of the FCRA to block both the Fraudulent Student Loans upon receiving a copy of her driver's license, a

copy of her social security card, and a copy of a FTC Identity Theft Report, which identified the Fraudulent Student Loans at issue, and specifically stated that her ex-husband fraudulently used her as a co-signer, and confirmed that Ms. Leonard never provided authorization for him or anyone else to use her identity for opening the Fraudulent Student Loans.

60. However, by refusing to do so, Trans Union not only violated Section 1681c-2 of the FCRA but made matters worse by further violating the FCRA and failing to conduct a reasonable investigation of Plaintiff's request to block both the Fraudulent Student Loans.

**Plaintiff's December 2025 Identity Theft Documents Sent to Trans Union and Ascent**

61. By letter dated December 10, 2025, Plaintiff sent Trans Union a written correspondence explaining that the Fraudulent Student Loans were the result of identity theft committed by Mr. Oyindamola.

62. Ms. Leonard also included a copy of her: driver's license, social security card, and FTC Identity Theft Report attesting that the Fraudulent Student Loans were the result of fraud and Ms. Leonard was the victim of identity theft.

63. Upon information and belief, as required by law, Trans Union then notified Ascent of Plaintiff's request to block the Fraudulent Student Loans.

64. Trans Union and Ascent, as required by the FCRA, were required to conduct reasonable investigations of Plaintiff's request.

65. Neither Trans Union nor Ascent conducted a reasonable investigation of Plaintiff's request.

66. By correspondence dated January 3, 2026, Ms. Leonard was informed by Trans Union that, the First Fraudulent Student Loan was verified as accurate, but the Second Fraudulent Student Loan was deleted.

9

**Defendants' Failure to Conduct Reasonable Investigations**

67. Ms. Leonard's dispute from December 2025 triggered obligations under the FCRA for Trans Union (Section 1681i(a)) and Ascent (Section 1681s-2(b)) to conduct reasonable investigations.

68. The dual investigative requirement further illustrates Congress' findings of the importance of accurate consumer credit reporting. Unfortunately, however, when conducting an 'investigation' CRAs and furnishers choose speed over accuracy.

69. Furnishers merely review information in their limited credit reporting databases, to determine if the disputed information is accurate. CRAs then simply accept as true whatever representation is made by the furnisher without questioning any of the results or conducting a true independent investigation.

70. In other words, no true investigation is performed by CRAs or furnishers other than a perfunctory data match of information. See e.g., Robertson v. J.C. Penney Co., 2008 WL 623397, at *8 (S.D. Miss. Mar. 4, 2008) ("There appears to have been no investigation of the disputed status of the claim at all"); Wood v. Credit One Bank, 277 F. Supp. 3d 821 (E.D. Va. 2017) (granting summary judgment to identity theft victim; in response to six disputes "Credit One did nothing more than verify each time that Wood's personal information on the ACDVs matched his personal information on the Account, and, three of the six times, Credit One merely compared that personal information to addresses associated with Wood on Accurint."); Scharf v. Trans Union, LLC, 2015 WL 6387501 (E.D. Mich. Oct. 22, 2015), reconsideration denied, 2015 WL 7016331 (E.D. Mich. Nov. 12, 2015) (granting summary judgment to identity theft victim where the furnisher merely reviewed its file to determine whether the loan was in default); Marchisio v. Carrington Mortg. Servs., LLC, 919 F.3d 1288, 1303 (11th Cir. 2019) ("…Defendant made no

correction nor any effort to insure that the pertinent databases revealed the existence of the settlement and the fact that no debt was owed by Plaintiffs. Meaning that when Plaintiffs took the predictable next step of disputing this debt with the credit reporting agencies, the outcome of the investigation by Defendant's employee was also quite predictable: the employee would incorrectly verify the existence of a continuing debt.")

71. This situation is no different.

72. It is apparent that Ms. Leonard did not authorize to be a co-signer on the Fraudulent Student Loans because, among other things, Ms. Leonard: 1) contacted Ascent and Launch to dispute the Fraudulent Student Loans as soon as she was aware of their existence; 2) completed an FTC Identity Theft Report; and 3) the information within the Docusigned loan application for the First Fraudulent Student Loan included a plainly false phone number and an email address that did not belong to Ms. Leonard. Further, a reasonable investigation should have revealed that the IP address of the individual who electronically signed the loan agreement was executed at a location other than the residence of Ms. Leonard.

73. Defendants either did not engage in any investigation when they were informed of the inaccurate reporting, or (alternatively) did not engage in a reasonable investigation, as such an investigation would have revealed that the inaccurate information was false and misleading.

74. Defendants failed to institute or adhere to policies and procedures that could have prevented the reporting of the inaccurate information.

75. Defendants knew or should have known that their actions violated the FCRA. Additionally, Defendants could have taken the steps necessary to bring their agents' actions within compliance of the statutes but neglected to do so and failed to adequately review those actions to ensure compliance with said laws.

76. Plaintiff's credit reports and file have been obtained from the CRA Defendant and have been reviewed by prospective and existing credit grantors and extenders of credit, and the inaccurate information has been a substantial factor in precluding Plaintiff from receiving credit offers and opportunities, known and unknown.

**Ms. Leonard's December 2025 Request for the Fraudulent Information to be Blocked**

77. Trans Union also violated Section 15 U.S.C. § 1681c-2 of the FCRA.

78. As stated above, 15 U.S.C. § 1681c-2(a) requires that CRAs like Trans Union block any information alleged to be the result of fraud by a consumer when: (i) appropriate proof of the identity of the consumer; (ii) a copy of a police report (or identity theft report); (iii) the identification of such information by the consumer; and (iv) a statement by the consumer that the information is not information relating to any transaction by the consumer. 15 U.S.C. § 1681c-2(a).

79. With Ms. Leonard's December 2025 request to block the Fraudulent Student Loans, she provided, among other things, a copy of her driver's license, a copy of her social security card, and a copy of a FTC Identity Theft Report, which identified the Fraudulent Student Loans at issue, and specifically stated that her ex-husband fraudulently used her as a co-signer, and confirmed the fact that Ms. Leonard never provided authorization for him or anyone else to use her personal identifying information.

80. Nevertheless, by correspondence dated December 19, 2025, Trans Union informed Ms. Leonard that it would not be blocking the information relating to the Fraudulent Student Loans.

81. All the documentation necessary for a fraud block under the FCRA was provided by Ms. Leonard to Trans Union and should have resulted in the disputed Fraudulent Student Loans

being blocked.

## Defendants' Violations of the Law

82.     At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

83.     At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of Plaintiff.

84.     As a result of Defendants' violations of the law, Ms. Leonard suffered interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by Defendants.

## Count One – Violations of the FCRA
### Plaintiff v. Trans Union

85.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

86.     At all times pertinent hereto, Trans Union was a "person" and a "consumer reporting agency" as those terms are defined by 15 U.S.C. § 1681a(b) and (f).

87.     At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

88.     At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

89.     The Defendant has violated numerous provisions of the FCRA for its improper

actions, including but not limited to Sections 1681e(b), 1681i(a) and 1681c-2 of the FCRA. Defendant willfully and negligently violated the FCRA and is liable for damages to Plaintiff pursuant to Section 1681n and 1681o of the FCRA.

90. The conduct of Defendant was a direct and proximate cause, as well as a substantial factor, in bringing about the actual damages and harm to Plaintiff that are outlined more fully above and, as a result, Defendant is liable to Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

### Count Two – Violations of the FCRA
### Plaintiff v. Ascent

91. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

92. At all times pertinent hereto, Ascent was a "person" as that term is defined by 15 U.S.C. § 1681a(b).

93. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

94. Ascent violated Section 1681s-2(b) of the FCRA by engaging in the following conduct:

   a. willfully and negligently failing to conduct a reasonable investigation of the inaccurate information that Plaintiff disputed;

   b. willfully and negligently failing to review all relevant information concerning Plaintiff's inaccurately reported trade lines;

   c. willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

    d.  willfully and negligently failing to report the accurate status of the inaccurate information to all credit reporting agencies;

    e.  willfully and negligently failing to provide all credit reporting agencies with the factual information and evidence that Plaintiff provided to Ascent;

    f.  willfully and negligently continuing to furnish and disseminate inaccurate, unlawful and derogatory credit account and other information concerning Plaintiff to credit reporting agencies and other entities; and

    g.  willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. §1681s-2(b).

95. The Defendant has violated numerous provisions of the FCRA for its improper actions, including but not limited to Section 1681s-2(b) of the FCRA. Defendant willfully and negligently violated the FCRA and is liable for damages to Plaintiff pursuant to Section 1681n and 1681o of the FCRA.

96. The conduct of Ascent was a direct and proximate cause, as well as a substantial factor in bringing about the serious injuries, actual damages and harm to Plaintiff that are outlined more fully above. As a result, Defendant is liable to Plaintiff for the full amount of statutory, actual, and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## JURY TRIAL DEMAND

97. Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendants, based on the following requested relief:

      a.      Actual damages;

      b.      Statutory damages;

      c.      Punitive damages;

      d.      Costs and reasonable attorneys' fees; and

      e.      Such other relief as may be necessary, just and proper.


**THE KIM LAW FIRM, LLC**

BY:   */s/ Richard H. Kim*
       Richard Kim, Esquire
       1515 Market St., Suite 1200
       Philadelphia, PA 19102
       Ph. 855-996-6342/Fax 855-235-5855
       rkim@thekimlawfirmllc.com

       *Attorney for Plaintiff Sherry Michelle Leonard*

Date: January 26, 2026